Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **FIRSTBANK PUERTO RICO**<br><br>Apelado<br><br>v.<br><br>**FRANCISCO ARTURO GONZALEZ DELGADO Y LA SLG COMPUESTA POR CARMEN MERCEDES BAUZÁ BAYRÓN Y OTROS**<br><br>Apelante | KLAN202400578 | ***APELACIÓN***<br>procedente del Tribunal de Primera Instancia Sala Superior de **Bayamón**<br><br>Caso Número: BY2023CV02094 (Salón 501)<br><br>Sobre:<br>**Cobro de Dinero – Ordinario y Otros** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de octubre de 2024.

Comparece ante nos, Francisco González Delgado, en adelante, González Delgado o apelante, solicitando que revisemos la *"Sentencia"* notificada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en adelante, TPI-Bayamón, el 6 de mayo de 2024. En la misma, el Foro Apelado resolvió sumariamente que el apelante tiene una deuda líquida y exigible con Firstbank Puerto Rico, en adelante, Firstbank o apelado. Además, desestimó la reconvención incoada por González Delgado.

Por los fundamentos que expondremos a continuación, *confirmamos* la sentencia apelada.

**I.**

El 30 de mayo de 2002, González Delgado, su esposa Carmen Bauzá Bayrón y la Sociedad de Bienes Gananciales entre ambos, emitieron un pagaré hipotecario por la suma de $209,000.00, a la orden de Doral Financial Corp, garantizando una propiedad en

Número Identificador

SEN2024 _____

Estancias de Tortuguero en el Municipio de Vega Baja.[1] El tenedor actual de dicho pagaré es Firstbank.

Ahora bien, el 21 de abril de 2023, Firstbank presentó una *"Demanda"* contra el apelante en cobro de dinero y ejecución de hipoteca.[2] En su demanda, alegó que González Delgado le adeuda solidariamente – junto con su esposa y la sociedad de bienes gananciales entre ambos – la suma total de $327,766.95. Solicitó que, de no pagarse la deuda, el Tribunal autorice el embargo, ejecución y venta de la propiedad garantizada por el pagaré hipotecario antedicho.

El 22 de mayo de 2023, Firstbank presentó una *"Moción Solicitando Referido a Mediación"*.[3] Dos (2) días más tarde, el 24 de mayo de 2023, el TPI-Bayamón emitió una *"Orden de Referido al Centro de Mediación de Conflictos en Casos de Ejecución de Hipotecas"*.[4]

Sin embargo, el 1 de junio de 2023, compareció Carmen Bauzá Bayrón mediante *"Moción en Solicitud de Prórroga"*, en la que informó haberse divorciado de González Delgado en el año 2014.[5] En la misma, indicó tener limitaciones económicas, que han impedido conseguir representación legal. Por ello, solicitó una prórroga de cuarenta y cinco (45) días para anunciar la misma.

Por su parte, el Centro de Mediación de Conflictos radicó una *"Moción Informativa Sobre Caso de Ejecución de Hipoteca"* el día 2 de junio de 2023.[6] En la misma anunció que el 2 de noviembre de 2023 estaría celebrando la vista mediante videoconferencia para atender el caso de epígrafe.

---

[1] Apéndice del recurso, pág. 4.
[2] *Id.* pág. 1.
[3] *Id.* pág. 15.
[4] *Id.* pág. 21.
[5] *Id.* pág. 24.
[6] *Id.* pág. 26.

Luego que el Foro Apelado concediera la prórroga de Carmen Bauzá Bayrón,[7] el 16 de junio de 2023, compareció González Delgado solicitando otra prórroga de veinte (20) días para contestar la demanda en cuestión.[8] El Foro *a quo* concedió la misma.[9] El 29 de junio de 2023, el apelante presentó su *"Contestación a Demanda y Reconvención"*. En su contestación, arguyó que Firstbank no cumplió con las normas federales y violentó su deber de fiducia y buena fe contractual. Por ello, solicitó que el TPI-Bayamón condenara a la misma, al pago de $50,000.00, además de costas y honorarios. Ese mismo día, el apelante le cursó a la apelada su *"Primer Interrogatorio y Solicitud de Producción de Documentos"* y un *"Primer Requerimiento de Admisiones"*.[10] Posteriormente, el 5 de julio de 2023, Firstbank presentó su *"Contestación a la Reconvención"*.[11]

Luego de varias solicitudes, mociones y oposiciones entre las partes, el Centro de Mediación de Conflictos presentó *"Moción Informativa Sobre Caso de Ejecución de Hipoteca"*.[12] En la misma indicó que el caso sería atendido el 5 de octubre de 2023. El 31 de enero de 2024, Firstbank radicó una moción en la que informó haber culminado con el proceso de mediación.[13] Solicitó, así, la continuación de los procesos. El Foro Primario, mediante orden, solicitó que en veinte (20) días el Centro de Mediación de Conflictos informara el resultado de los procedimientos de mediación entre las partes del caso de autos.[14] En cumplimiento, el referido Centro informó el 9 de febrero de 2024, que, por asuntos de índole procesal, concluyó su intervención.

---

[7] Apéndice del recurso, pág. 29.
[8] *Id.* pág. 30.
[9] *Id.* pág. 34.
[10] *Id.* pág. 83.
[11] *Id.* pág. 85.
[12] *Id.* pág. 143.
[13] *Id.* pág. 146.
[14] *Id.* pág. 148.

Así las cosas, el 20 de febrero de 2024, Firstbank presentó una *"Moción sobre Sentencia Sumaria"*.[15] En la misma, expuso la siguiente relación de hechos:

1. La parte demandada es dueña de la propiedad que se describe a continuación:[16]

   **URBANA**: Solar radicado en la Urbanización Estancias de Tortuguero, localizado en el Barrio Algarrobo del término municipal de Vega Baja, Puerto Rico, que se describe en el plano de Inscripción de la Urbanización, con el número, área y colindancias que se relacionan a continuación: Solar número: ocho (8) del Bloque I (I-8). Área del solar: Novecientos metros cuadrados (900.00 m.c). En lindes: por el **NORTE**, con la calle número diez (10), en una distancia de 25.00 metros (25.00 mt); por el **SUR**, con el lote número veintiuno (21), en una distancia de veinticinco metros (25.00 mts); por el **ESTE**, con el lote número nueve (9), en distancia de treinta y seis metros (36.00 mts); y por el **OESTE**, con el lote número siete (7), en una distancia de treinta y seis (36.00 mts). Enclava una estructura de concreto a ser destinada a vivienda.
   Finca #25,176. Inscrita al folio 1 del tomo 309 de Vega Baja, Registro de la Propiedad de Bayamón, Sección IV.

2. Francisco Arturo González Delgado y su esposa Carmen Mercedes Bauzá Bayrón, constituyeron y emitieron Pagaré Hipotecario por la suma principal de $209,000.00 a la orden de Doral Financial Corporation, con intereses al 6.25% anual, autenticado dicho pagaré mediante Testimonio #491 ante el Notario Público Ricardo Ceballos Columna, fechado 30 de mayo de 2002. Firstbank Puerto Rico es el tenedor del pagaré y el acreedor hipotecario.[17]

---

[15] Apéndice del recurso, pág. 152.
[16] *Id*. pág. 35.
[17] *Id*. págs. 162-163.

3. Quedó dicho pagaré hipotecario garantizado con hipoteca constituida mediante la Escritura #199 de igual fecha y ante el mismo Notario, garantizada dicha hipoteca con la propiedad descrita en el párrafo #1 de esta sentencia.[18]

4. Dicha hipoteca fue objeto de un Plan de reducción de pago, extensión de término, intereses solamente y reducción de interés (PRP), en el que se modificaron ciertos términos del contrato entre las partes, el 18 de octubre de 2010.[19]

5. Se aneja copia del pagaré, como Exhibit II y declaración jurada de un oficial bancario de la demandante en la que se afirma entre otras que la demandante es "tenedor de buena fe del pagaré hipotecario".[20]

6. La parte demandada se obligó a pagar las sumas principales señaladas en el pagaré, sus intereses al tipo convenido y según más adelante se especifica.[21]

7. La responsabilidad hipotecaria del inmueble es igual al balance de principal original de la deuda aquí reclamada conforme se pactó por las partes en la escritura de constitución de hipoteca.[22]

8. La hipoteca a la cual se hace referencia está inscrita en el Registro de la Propiedad y la misma no ha sido cancelada, ni en todo, ni en parte, ni está pendiente de cancelación.[23]

9. Las cantidades de dinero que más adelante se especifican y las mismas están vencidas, son líquidas y exigibles y la parte demandante ha reclamado el pago de las mismas en

---

[18] Apéndice del recurso, págs. 164-187.
[19] *Id.* pág. 212.
[20] *Id.* pág. 188.
[21] *Id.* pág. 162.
[22] *Id.* pág. 165.
[23] *Id.* pág. 160.

su totalidad, más las cantidades que se acumulen a partir de esta fecha.[24]

10. La obligación de pago de cargos por demora surge claramente del pagaré hipotecario, que en su primera página establece que:[25]

> "El Deudor pagará al tenedor de este Pagaré un cargo por pago atrasado de cinco por ciento de cualquier plazo mensual que no sea recibido por el deudor de este Pagaré dentro de Quince días después de la fecha de vencimiento de dicho plazo".

11. La cláusula 7 de la escritura de constitución de hipoteca, relacionado a la protección del interés del prestador en la propiedad y derecho bajo la hipoteca, establece:[26]

> "Si el Deudor dejare de cumplir los pactos y convenios contenidos en esta Hipoteca, o si se comenzare alguna acción o procedimiento que materialmente afecte el interés del Prestador de la Propiedad, incluyendo, sin implicar limitación, de expropiación, insolvencia, ejecución de reglamentación de la Junta de Planificación de Puerto Rico o concurso de acreedores o procedimientos relacionados con un quebrado o un causante, el Prestador, a opción del Prestador, previa notificación al Deudor, podrá hacer comparecencias, desembolsos de dinero y tomar cualquier acción que sea necesaria para proteger el interés del Prestador incluyendo, sin implicar limitación, desembolso de honorarios razonables de abogado entrar a la Propiedad para efectuar reparaciones".

12. La cláusula 18 de la escritura de hipoteca permite y da una opción de aceleración de la deuda para el caso de

---

[24] Apéndice del recurso, pág. 188.
[25] *Id*. pág. 162.
[26] *Id*. pág. 173.

incumplimiento de la parte demandada. La parte demandante ejerció dicho derecho que implica el acelerar el vencimiento de la obligación, acelerándola vencida y por tanto negándose a recibir pagos parciales. El mismo derecho de aceleración está contemplado en el pagaré.[27]

13. Habiéndose dado cumplimiento a la Ley 184-2012 en el caso de epígrafe, procede que el Tribunal considere la presente solicitud de Sentencia Sumaria.[28]

La relación de hechos expuesta por Firstbank en su moción para que se dicte sentencia sumariamente fue sustentada con los siguientes documentos:

1. Certificación de Propiedad Inmueble.[29]

2. Copia del Pagaré emitido el 30 de mayo de 2002.[30]

3. Escritura de Hipoteca constituida el 30 de mayo de 2002.[31]

4. Declaración Jurada de Michael García Falconer del 6 de febrero de 2024.[32]

Así, la parte apelada arguyó que la documentación presentada evidenciaba que es acreedor hipotecario del apelante. Expuso que tenía derecho a declarar vencido el balance adeudado, y proceder con el cobro del mismo.[33]

Por su parte, González Delgado presentó su *"Oposición a Moción de Sentencia Sumaria de la Demandante"* el 26 de febrero de 2024.[34] En la misma, solo señaló un asunto litigioso en controversia.[35] El único argumento, como asunto controvertible, que

---

[27] Apéndice del recurso, pág. 180.
[28] *Id*. págs. 149-150.
[29] *Id*. pág. 160.
[30] *Id*. pág. 162.
[31] *Id*. pág. 164.
[32] *Id*. pág. 188.
[33] *Id*. pág. 158.
[34] *Id*. pág. 191.
[35] *Id*. pág. 192.

señaló en su moción en oposición el apelante, reza de la siguiente manera:

> Muy respetuosamente sometemos que en el presente caso, en la etapa procesal en que se encuentra, la controversia es si la demandante incumplió con la Dodd-Frank: Title XIV-Mortgage Reform and Anti-Predatory Lending Act (Dodd-Frank Act sec. 1402) y si la demandante incumplió con la Ley 184-2012, según enmendada por la Ley 38-2019 y con lo dispuesto en ScotiaBank v. Rosario Ramos, 2020 TSPR 123 y el derecho de la parte demandada a que la demandante cumpla con dichas leyes y jurisprudencia.

Entre los documentos que presentó González Delgado con su escrito en oposición, se encuentra una declaración jurada suscrita por él, con fecha del 26 de febrero de 2024.[36] En la misma declara que el 15 de enero de 2024 se reunió con una representante de Firstbank, para una posible mediación, la cual fue interrumpida, para luego notificarles que habían devuelto el caso al Foro Primario. Expuso, además, que la apelada ha incumplido con varias disposiciones federales.

Así las cosas, el 6 de mayo de 2024, el TPI-Bayamón notificó su *"Sentencia"*.[37] En la misma, determinó que, conforme a la Regla 36 de Procedimiento Civil, 32 LPRA Ap. III, R. 36, podía disponer del caso sin celebrar vista, y de manera sumaria. Esto, ya que no existe controversia sobre los hechos del caso, sino sobre derecho. Concluyó, además, que Firstbank dio cumplimiento a las disposiciones de la Ley Núm. 182-2012. También, expuso que la apelada probó, con documentación admisible, los méritos de su reclamo, que la deuda en cuestión está vencida y es exigible.

---

[36] Apéndice del recurso, pág. 204.
[37] *Id*. pág. 211.

Finalmente, declaró "No Ha Lugar" la *"Reconvención"* incoada por el apelante.

En consecución, el Foro Primario condenó a González Delgado a pagar un total de $318,059.44, además de $20,900.00 por concepto de honorarios de abogado.[38] Inconforme, González Delgado radicó una *"Moción de Reconsideración y en Solicitud de Relevo de Sentencia".*[39] El Foro Apelado declaró "No Ha Lugar" la misma el 22 de mayo de 2024.

Así las cosas, el 11 de junio de 2024, González Delgado presentó un recurso de *"Apelación"* ante nos. En el mismo, hace el siguiente señalamiento de error:

> ERRÓ EL TRIBUNAL A QUO AL DICTAR SENTENCIA SUMARIA SIN HABER CONTESTADO LA DEMANDANTE NUESTRO DESCUBRIMIENTO DE PRUEBA Y AL DECLARAR NO HA LUGAR LA MOCIÓN DE RECONSIDERACIÓN Y DE RELEVO DE SENTENCIA DEL 29 DE ABRIL DE 2024 HACIENDO ABSTRACCION DEL RESTO DEL DERECHO Y EN CLARA VIOLACIÓN A LOS PRINCIPIOS MÁS BÁSICOS DEL DEBIDO PROCESO DE LEY QUE LE ASISTE A LA DEMANDADA EN UN PROCEDIMIENTO JUDICIAL.

Mediante *"Resolución"* del 13 de junio de 2024, concedimos al apelado hasta el 11 de julio de 2024 para presentar su posición en cuanto al recurso, conforme dispone la Regla 22 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 22. En cumplimiento, el 11 de julio de 2024, Firstbank compareció mediante su *"Alegato de la Parte Apelada"*.

Perfeccionado el recurso ante nuestra consideración, procedemos a resolver.

---

[38] Apéndice del recurso, pág. 214.
[39] *Id.* pág. 216.

**II.**

### A. Apelación

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea,* 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán et al. v. SLG Moret-Brunet,* 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles,* 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell,* 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.,* 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 741 (2007).

**B. Sentencia Sumaria**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR ___ (2024); *Birriel Colón v. Econo y otro,* 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.,* 212 DPR 981, 992 (2023); *Oriental Bank v. Caballero García,* 212 DPR 671, 678 (2023); *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601, 610 (2023); *Acevedo y otros v. Depto. Hacienda y otros,* 212 DPR 335, 350 (2023); *Universal Ins. y otros v. ELA y otros,* 211 DPR 455, 471 (2023); *Segarra Rivera v. Int'l. Shipping et al.,* 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Cruz, López v. Casa Bella y otros,* supra; *Oriental Bank v. Caballero García,* supra, pág. 678; *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. Reglas 36.1 y 36.2 de Procedimiento Civil, supra.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 979; *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. Id.

La Regla 36.1 de Procedimiento Civil, supra, antes mencionada, reconoce que una parte que solicite un remedio puede presentar una solicitud de sentencia sumaria "en cualquier momento después de haber transcurrido veinte (20) días a partir de la fecha en que se emplaza a la parte demandada, o después que la parte contraria le haya notificado una moción de sentencia sumaria, pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba".

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos

hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, supra; *Oriental Bank v. Caballero García,* supra, pág. 679; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

En particular, la Regla 36 de Procedimiento Civil, supra, permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". *Mun. de Añasco v. ASES et al.,* 188 DPR 307, 310 (2013).

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros,* supra; *Acevedo y otros v. Depto. Hacienda y otros,* supra; *Segarra Rivera v. Int'l. Shipping et al.,* supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos

complejos o casos que involucren cuestiones de interés público". Id. No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros,* supra, pág. 472.

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, *quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente* puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, *si la misma procede en derecho.* Id. Es decir, el hecho de no oponer a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión,* supra, pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. Id. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. Id. De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, supra, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Por otro lado, y relevante al caso de autos, la Regla 36.6 de Procedimiento Civil, supra, establece que una parte que se oponga a una moción de sentencia sumaria que no cuente con la documentación o evidencia necesaria para así hacerlo, puede presentar una declaración jurada. En este documento, deberá exponer las razones por las que se le imposibilita evidenciar los hechos esenciales que justifican su oposición. Por ello, en casos como estos, el Foro Primario puede, discrecionalmente, denegar o posponer el ejercicio de considerar la solicitud de sentencia sumaria, hasta tanto culmine el descubrimiento de prueba. *García Rivera et al. v. Enríquez*, 153 DPR 323, 340 (2001); *Pérez v. El Vocero de P.R.*, 149 DPR 427, 449-450 (1999).

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *E.L.A. v. Cole*, supra, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

[E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

*Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *Cruz, López v. Casa Bella y otros*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo*, y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho.

### III.

González Delgado recurre ante esta Curia arguyendo que el Foro Apelado se equivocó al dictar sentencia sumaria en su contra. En esencia, el apelante sostiene que primero debió descubrirse la prueba, en virtud del debido proceso de ley. *No le asiste razón.*

Con relación al descubrimiento de prueba, lo cierto es que las normas procesales concernientes a las sentencias dictadas de manera sumaria contemplan que los tribunales, en el ejercicio de su discreción podrán posponer la evaluación de la adjudicación de

una sentencia sumaria para que las partes tengan una oportunidad razonable de efectuar un descubrimiento de prueba, ***de ser necesario.*** Sin embargo, nada impide que se dicte una sentencia sumaria previo o durante un descubrimiento de prueba.

Además, de conformidad con la Regla 36.1 de Procedimiento Civil, supra, dispone que una solicitud de sentencia sumaria puede ser presentada por cualquier parte en el pleito y "*en cualquier momento,* después de haber transcurrido veinte (20) días a partir de la fecha en que se emplaza a la parte demandada, o después que la parte contraria le haya notificado una moción de sentencia sumaria, pero no más tarde de los treinta (30) días siguientes a la fecha establecida por el tribunal para concluir el descubrimiento de prueba". Si al evaluar la moción de sentencia sumaria, su oposición y la prueba documental sometida se desprende que no existe controversia de hechos materiales, el tribunal podrá dictar sentencia sumaria, si así procede en derecho. Tal y como lo hizo el Tribunal en el presente caso. Por ello, no tiene mérito el señalamiento de error relacionado con que la falta de descubrimiento de prueba impedía que el Foro Primario dictara sentencia sumaria a favor de Firstbank.

Por otro lado, la declaración jurada de la parte apelante, del 26 de febrero de 2024, no expone razones por las que no pueda presentar o evidenciar hechos esenciales que justifiquen su oposición. En virtud de todo lo anterior, concluimos que el TPI-Bayamón no infringió la Regla 36 de Procedimiento Civil, supra, ni erró al dictar la *"Sentencia"* apelada sin antes haber culminado el descubrimiento de prueba.

Al revisar la moción para que se dicte sentencia sumariamente de la apelada, colegimos que los documentos reseñados previamente, en efecto, colocaron en posición al TPI-Bayamón para concluir que el apelante tiene una deuda líquida y exigible con

Firstbank. Además, huelga mencionar que González Delgado, en su escrito en oposición, no solo ***no expuso relaciones de hechos incontrovertibles, sino que el único señalamiento en controversia que apuntaló es materia de derecho***. Por lo tanto, no logró rebatir la solicitud de sentencia sumaria, conforme a lo exigido en la Regla 36 de Procedimiento Civil, supra.

Luego de una sosegada evaluación del expediente que nos ocupa, de la solicitud de sentencia sumaria de la apelada, y la revisión de *novo* sobre la misma, *lo cual en derecho nos corresponde*, hemos podido constatar que las determinaciones de hechos y derecho realizadas por el TPI-Bayamón en su *"Sentencia"* se sustentan con los documentos presentados por estas. A su vez, entendemos que el apelante no pudo controvertir los hechos, expuestos y probados, por la aquí apelada. En mérito de lo antes expuesto, sostenemos el dictamen apelado en toda su extensión.

## IV.

Por los fundamentos que anteceden, *confirmamos la "Sentencia" apelada.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones